[No. 43277.　En Banc.　January 2, 1975.]

NINA KATHELINE BLONDHEIM, *Petitioner*, v. THE STATE OF
WASHINGTON, *Respondent.*

Bruce D. Erickson, Public Defender, and R. Stewart Bock, for petitioner.

Christopher T. Bayley, Prosecuting Attorney, by Ruth A. Nordenbrook, Deputy, for respondent.

STAFFORD, J.—Petitioner, Nina Blondheim, brings this matter on by writ of certiorari to review a Juvenile Court order which denied her motion to dismiss.

Petitioner was born August 21, 1956. On November 30, 1973, her mother filed a petition, in the King County Juvenile Court, alleging petitioner had run away from home or placements on, but not limited to, April 4, 1973, April 12, 1973, June 9, 1973, June 24, 1973, July 17, 1973, and August 15, 1973, and that she had been AWOL from the Job Corps Center in Astoria, Oregon, on at least two occasions resulting in her termination from that program. Petitioner admitted the facts alleged in the petition. Her motion to dismiss the action was denied and she was declared an incorrigible dependent pursuant to RCW 13.04.010(7). The Juvenile Court committed her to the Department of Social and Health Services, Division of Institutions. The commitment was suspended and she was placed on probation and released to herself, upon the condition she actively seek employment and cooperate with her probation officer.

Although admitting the facts, petitioner challenges RCW 13.04.010(7), defining incorrigibility, as unconstitutionally vague, overbroad, and, when coupled with RCW 13.04.095(6), punishing a mere status. Further, she asserts there is a violation of the eighth amendment to the United States Constitution prohibiting cruel or unusual punishment.

The State maintains petitioner lacks standing to challenge the constitutionality of the foregoing statutes. It is urged that she has identified no personal constitutional rights which have been infringed and that she cannot resort to hypotheticals to render the statute overbroad. In addition, the State contends petitioner is not presently incarcerated and, thus, cannot assert that the incarceration of incorrigible dependents violates the Eighth Amendment.

■ The State correctly points out the general rule that one cannot resort to hypothetical behavior in urging the unconstitutionality of a statute. One must be adversely affected by the statute challenged. *State v. Human Relations Research Foundation,* 64 Wn.2d 262, 391 P.2d 513 (1964); *State v. Lundquist,* 60 Wn.2d 397, 374 P.2d 246 (1962). The rule is different, however, when First Amendment rights are allegedly involved and a statute's overbreadth is asserted. In such cases one can resort to hypotheticals to demonstrate the alleged overbreadth. *Dombrowski v. Pfister,* 380 U.S. 479, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965); *Aptheker v. Secretary of State,* 378 U.S. 500, 12 L. Ed. 2d 992, 84 S. Ct. 1659 (1964); *NAACP v. Button,* 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963). Although petitioner has pointed to no specific personal infringement of First Amendment rights, she has alluded to hypotheticals in which First Amendment rights might be infringed by RCW 13.04.010(7). As a result, petitioner has standing to challenge the statute as being unconstitutionally overbroad.

The State also maintains petitioner has no standing to challenge the statutes' alleged violation of the Eighth Amendment because she has not been incarcerated. In the past, infringement of a specific legal right or interest was required for standing. However, in recent years there has been a trend to permit a broader view of factual interests that will give rise to standing. *Association of Data Processing Serv. Orgns., Inc. v. Camp,* 397 U.S. 150, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970); *Barlow v. Collins,* 397 U.S. 159, 25

L. Ed. 2d 192, 90 S. Ct. 832 (1970). In *Data Processing*, at page 153, the United States Supreme Court said:

The "legal interest" test goes to the merits. The question of standing is different. It concerns, apart from the "case" or "controversy" test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.

■ In light of this more liberalized view of standing, it is clear petitioner has standing to challenge the constitutionality of legislation which provides for the incarceration of incorrigble dependents. Although petitioner is not presently incarcerated, she received a suspended commitment and is on probation therefrom. Normally, such probation can be revoked in the sound discretion of the trial court. *State v. Kuhn,* 81 Wn.2d 648, 503 P.2d 1061 (1972); *State v. Riddell,* 75 Wn.2d 85, 449 P.2d 97 (1968); *State v. Giraud,* 68 Wn.2d 176, 412 P.2d 104 (1966). That being the case, petitioner stands to lose her liberty if the Juvenile Court should exercise its discretion and revoke the suspended commitment. Far from being theoretical, her interests encompass a real judicial controversy. The interest for which petitioner seeks protection is arguably within the zone of interests protected by the constitutional provisions in question. Thus, petitioner has standing to challenge the constitutionality of the statutes.

Turning next to petitioner's challenge of RCW 13.04.010(7) on the grounds of vagueness and overbreadth, the pertinent portion of the statute reads:

For the purpose of this chapter the words "dependent child" shall mean any child under the age of eighteen years:

. . .

(7) Who is incorrigible; that is, who is beyond the control and power of his parents, guardian, or custodian by reason of the conduct or nature of said child . . .

■ While a single statute may be subject to both

"vagueness" and "overbreadth," there is a recognized distinction between the doctrines. *Grayned v. Rockford*, 408 U.S. 104, 108-21, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972). "Vagueness" goes to the question of procedural due process, *i.e.*, whether a statute provides fair notice, measured by common practice and understanding, of that conduct which is prohibited and whether there are proper standards for adjudication. *Grayned v. Rockford, supra* at 108; *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 600, 512 P.2d 1049 (1973); *State v. Oyen*, 78 Wn.2d 909, 480 P.2d 766 (1971), *judgment vacated and case remanded on other grounds*, 408 U.S. 933 (1972). Impossible standards of specificity are not required. On the other hand "overbreadth" goes to the question of substantive due process, *i.e.*, whether the statute in question is so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well. *Grayned v. Rockford, supra* at 114; *United States v. Robel*, 389 U.S. 258, 19 L. Ed. 2d 508, 88 S. Ct. 419 (1967); *Aptheker v. Secretary of State, supra.*

 It is well settled that due process is required in juvenile court adjudicatory proceedings in which a child may be committed to an institution. *McKeiver v. Pennsylvania*, 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971); *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967); *In re Jackson*, 6 Wn. App. 962, 497 P.2d 259 (1972). The instant case presents such a situation. Therefore, the statute in question must be neither unconstitutionally vague nor overbroad.

 In a well-reasoned opinion the Court of Appeals of this state found the statute in question was not void for vagueness. In *In re Jackson, supra*, the court said at page 965:

Children of ordinary understanding know that they must obey their parents or those persons lawfully standing in a parent's place. Therefore, the phrase "beyond the control and power of his parents" gives fundamentally fair

notice to the child of a pattern of behavior that might cause him or her to be considered incorrigible.

(Footnote omitted.)

The language of *Jackson* and the cases cited therein is dispositive of the issue of vagueness. It also follows that if the language of RCW 13.04.010(7) is sufficiently clear to give fundamentally fair notice to children it is sufficiently clear to notify parents and law enforcement officers of the kind of behavior prohibited. Therefore, the statute is not void for vagueness.

Likewise, RCW 13.04.010(7) is not unconstitutionally overbroad. From a standpoint of logic, it is clear that in enacting this statute there was no legislative intent to unlawfully infringe upon a child's freedom of speech, religion, or any other First Amendment right or to raise issues where parents might expect or order their children to do something of an unlawful or antisocial nature. Rather, the legislature obviously intended to encompass only lawful demands and expectations of parents. Implicit in the concept of parental control is the idea that parents' control will be lawful. Any other interpretation would reduce the statute to an absurdity. We will not interpret a statute to reach an absurd result. *Yakima First Baptist Homes, Inc. v. Gray*, 82 Wn.2d 295, 510 P.2d 243 (1973); *Lenci v. Seattle*, 63 Wn.2d 664, 388 P.2d 926 (1964). For these reasons we hold that the statute is not overbroad.

Next petitioner contends RCW 13.04.010(7) violates the Eighth Amendment in that it punishes the "status" of being incorrigible. In *Robinson v. California*, 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962), the United States Supreme Court found that a statute which made the "status" of being a narcotics addict a criminal offense inflicted a cruel and unusual punishment in violation of the eighth and fourteenth amendments to the United States Constitution. It was not the acts or behavior of the person thus afflicted that were being proscribed by the statute. Rather, it was the person's condition or state of being, over which

he had little or no control, that was being punished. On the other hand, persons convicted of crimes for behavior in public which is proscribed by statute are not deemed convicted of a so-called "status" crime. *Powell v. Texas*, 392 U.S. 514, 532, 20 L. Ed. 2d 1254, 88 S. Ct. 2145 (1968); *Seattle v. Hill*, 72 Wn.2d 786, 435 P.2d 692 (1967), *cert. denied*, 393 U.S. 872 (1968); *State v. Shelton*, 71 Wn.2d 838, 431 P.2d 201 (1967); *State v. Myers*, 6 Wn. App. 557, 494 P.2d 1015 (1972).

▋ Although incorrigibility is a condition or state of being, one acquires such a "status" only by reason of one's conduct or a pattern of behavior proscribed by the statute. An incorrigible is one *"who is beyond the control and power* of his parents, guardian, or custodian *by reason of the conduct or nature of said child . . ."* RCW 13.04.010(7). (Italics ours.) The statute does not relate to a true "status." Rather, it relates to a course of conduct or the nature of the child which places it *beyond the lawfully exercised control or lawfully exercised power of its parents, guardian, or custodian. See S\*\*\*\* S\*\*\*\* v. State*, 299 A.2d 560, 568 (Me. Sup. Jud. Ct. 1973); *Gesicki v. Oswald*, 336 F. Supp. 371, 376 n.6 (S.D.N.Y. 1971) (three judge court), *aff'd per curiam*, 406 U.S. 913 (1972).

In the instant case, the petition filed by petitioner's mother alleged specific conduct on the part of her daughter. Petitioner admitted the allegations. The "status" of being incorrigible was established by proof of the facts alleged in the petition. But, it was not the "status" of being incorrigible for which petitioner was given a suspended commitment and placed on probation. Rather, it was her *conduct* which placed her beyond the lawfully exercised control or power of her mother, that led to her being found to be incorrigible, and, thus, resulted in the suspended commitment.

Petitioner also contends that RCW 13.04.010(7), when viewed in conjunction with RCW 13.04.095(6) (providing for the commitment of incorrigible dependents to the "De-

partment of Institutions") is disproportionate to the conduct proscribed and thus violates the Eighth Amendment. Petitioner's position is based on the fact that a suspended commitment to the Division of Institutions gives rise to the possibility that she might be incarcerated in an institutional facility also housing juvenile delinquents. While this *possibility* apparently does exist, she has not been placed in such an institutional facility. Therefore, the issue is not before us. We cannot help but observe, however, that one who is a dependent, albeit an incorrigible dependent, should not be committed for treatment or confinement in the same immediate area of an institution where he or she may associate with children committed for delinquent behavior. This is not to say, however, that incorrigible dependents cannot be housed within the confines of the same institutional facility as delinquent children. Rather, an incorrigible dependent committed to an institutional facility also housing juvenile delinquents must be kept separate and apart from them.

The order of the trial court denying petitioner's motion to dismiss this action is affirmed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.