[No. 3647–II.   Division Two.   December 31, 1979.]

THE STATE OF WASHINGTON, *Appellant,* v. ROY T. STRITMATTER, *Respondent.*

*Curtis M. Janhunen, Prosecuting Attorney,* and *Jeffrey B. Ranes, Deputy,* for appellant.

*Lester Stritmatter,* for respondent.

REED, J.—The State of Washington appeals the order of the trial court setting aside a verdict of guilty to unlawful possession of undersized sturgeon and failure to complete fish tickets. We affirm the trial court's order setting aside the verdict of guilty and dismissing the charges against defendant, Roy T. Stritmatter.

On September 20, 1977, state fisheries officers issued citations to defendant, the owner of a fish packing plant in Hoquiam, for possession of 11 undersized sturgeon. On this date the officers discovered 9 "dressed" sturgeon (cleaned with heads and tails removed) in defendant's possession, each measuring less than 33 inches in length, in a shipping

crate commingled with other cleaned sturgeon of legal size. The officers also discovered 2 sturgeon, 1 measuring 39 inches and the other measuring 44 inches "in the round" (not cleaned with heads and tails remaining) awaiting cleaning in a receiving tote. On September 23, 1977, the officers returned to defendant's plant and cited defendant for possession of 8 more undersized sturgeon, all less than 33 inches in length, which had been dressed and commingled with other sturgeon in shipping crates. Minimum legal size for commercial sturgeon is 33 inches dressed and 48 inches in the round. WAC 220–20–020(2).[1]

Defendant and his employees testified that they received the sturgeon from Eugene Goodell, a commercial salmon fisherman, when they purchased Goodell's salmon catch on September 20 and 23. Defendant denied that he purchased the undersized sturgeon and maintained that he was only cleaning them for Goodell as a favor. Goodell corroborated this by testifying that he brought defendant "about eight" undersized sturgeon on September 20 and that he intended to take the sturgeon home for personal use after they were cleaned. The record, however, is unclear as to the exact number of sturgeon that Goodell turned over to defendant incident to his commercial salmon fishing.

Prior to submitting the case to the jury, the trial court rejected an instruction proposed by the defendant based upon an interpretation of WAC 220–36–03001(3) stating as a matter of law that sturgeon of any size taken incidental to commercial salmon fishing in Grays Harbor waters may be retained. The trial court submitted the case to the jury which returned a verdict of guilty. On motion of the defendant the trial court reconsidered its refusal to submit the proposed instruction. After hearing argument, the trial

---

[1]WAC 220–20–020(2) reads as follows: ·

"It shall be unlawful to take, fish for or possess for commercial purposes any round, undressed sturgeon less than 48 inches or greater than 72 inches in length or any dressed sturgeon less than 33 inches or greater than 53 inches in length."

court ordered the guilty verdict set aside based upon insufficient evidence that defendant possessed the sturgeon with a commercial purpose and the failure of the Department of Fisheries regulations to give sufficient notice that undersized sturgeon could not legally be retained by commercial salmon fishermen operating in Grays Harbor Salmon Management Areas. We agree that the regulations do not provide sufficient notice of prohibited conduct, and that they thereby violate due process.

■ Procedural due process requires that penal statutes and regulations give sufficient and fair notice so that persons of common intelligence can determine the prohibited conduct with reasonable certainty. *E.g., State v. Jordan,* 91 Wn.2d 386, 389, 588 P.2d 1155 (1979); *State v. Dougall,* 89 Wn.2d 118, 121, 570 P.2d 135 (1977). *Accord, In re Powell,* 92 Wn.2d 882, 602 P.2d 711 (1979). We find that the Department of Fisheries regulation at issue in the present case does not meet this standard. Therefore, it is unconstitutionally vague.

■ WAC 220–20–020(2), included among the general statewide provisions of the Department's regulations, states that it is unlawful to take, fish or possess for commercial purposes dressed sturgeon less than 33 inches in length or sturgeon in the round less than 48 inches in length. In WAC Chapter 220–36 *et seq.* the Department established special rules to govern commercial fishing in Grays Harbor waters. Among the regulations in this chapter is WAC 220–36–03001, entitled "Salmon fishing areas—Seasons and lawful gear—Other varieties." The regulations in this section set forth the type of gear which may be used and the seasons for commercial fishing in Grays Harbor waters. Included in this section is WAC 220–36–03001(3) which reads as follows:

It shall be lawful to retain for commercial purposes sturgeon and species of bottom fish defined as such in WAC 220–16–340 taken incidental to any lawful commercial salmon fishery in Grays Harbor Salmon Management and Catch Reporting Areas 2A, 2B, 2C and 2D.

Defendant argues that this section clearly sets forth an exception to the statewide size requirements for sturgeon and allows commercial salmon fishermen in Grays Harbor waters to retain sturgeon of any size which become caught in their salmon fishing equipment. The State argues with equal force that WAC 220–36–03001(3) means that sturgeon *of legal size* taken incidental to commercial salmon fishing in Grays Harbor waters may be retained when caught with commercial fishing gear in contrast to hand lines. We cannot agree with either party that WAC 220–36–03001(3) is subject to a clear and unambiguous interpretation so that it gives fair and adequate notice of the conduct that is prohibited. We hold that this regulation is unconstitutionally vague as it does not give a person of common intelligence fair warning of whether or not sturgeon of any size may be retained when taken incidental to lawful commercial salmon fishing in Grays Harbor waters.[2]

The State also argues on appeal that the trial court erred in overturning the guilty verdict based upon the insufficiency of the evidence. In view of our affirmance of the trial court on other grounds, we need not reach this issue. Likewise, we refuse to address several other issues raised in defendant's brief because he did not properly perfect a cross appeal. RAP 5.1(d) and 10.3(b). *See also DeBlasio v. Kittitas*, 57 Wn.2d 208, 356 P.2d 606 (1960).

---

[2]That the regulations do, in fact, tend to confuse and mislead is evidenced by the following remarks of the deputy prosecutor during argument on defendant's motion for reconsideration.

"[Mr. Ranes]: The other issue I would like to address just briefly was the confusing WACs, namely WAC 220–36–03001(3), reconciling that with WAC 220–20–020. Subsequent to the trial in this matter I have had some contact with Mr. Paul [Majkut], the Assistant Attorney General of the State of Washington who assists in writing these particular WACs. While he admits to me that it is a rather confusing set of WAC regulations, he stated that these WACs should be read together. The size limits set out in WAC 220–20–020 still apply in WAC 220–36–03001.

"    . . .

"Well, I would disagree with that. But then, again, I find it very difficult to understand these regulations, and I have been going over and over them with—"

The order of the trial court setting aside the verdict of guilty is affirmed.

PEARSON, C.J., and PETRIE, J., concur.